IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALLICE TRADING, INC., d/b/a CHASE CONSTRUCTION CO., } } } | |
| Plaintiff, } } | |
| VS. } | CIVIL ACTION NO. H-06-217 |
| } | |
| SHAW ENVIRONMENTAL, INC. and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA } } } } | |
| Defendants. } | |

**OPINION & ORDER**

Pending before the court in this breach of contract case is Defendants Shaw Environmental, Inc. ("Shaw") and The Insurance Company of the State of Pensylvania's ("Insurance Company's") motion for summary judgment (Doc. 14). Plaintiff Allice Trading, Inc. d/b/a Chase Construction Company ("Chase") has filed a response in opposition to Defendants' motion (Doc. 16). For the reasons explained below, the court ORDERS that Defendants' motion is DENIED.

I.  Background and Relevant Facts

This case arises from a contract dispute between Shaw and Chase for a construction project known as the Hills at Sims Greenway (hereafter "Project"), commissioned by the Harris County Flood Control District ("District"). On March 22, 2005, Shaw and Chase entered into the "Shaw Environmental, Inc. Work Agreement" (hereafter "Contract") for construction services relating to the Project. (*See* Contract, Doc. 14 Ex. A.) According to Chase, "[u]nlike typical contracts which specifically set out the performance to be rendered by one party in exchange for payment by the other party, the initial written agreement between Chase and Shaw did not specify either the nature of Chase's required performance, or the amounts to be paid in exchange for the same." (Allice Aff. 1-2, Doc. 16 Ex. 1.) Rather, under the Contract, Chase agreed to provide

various labor and materials to the Project, and Shaw agreed to pay Chase via monthly invoices for work performed. (Contract §§ 1 & 3, Doc. 14 Ex. A.)

Chase's work on the Project consisted "mainly of installation of storm sewers, including 12 x 8 foot boxes, 5 x 4 foot boxes, and 54, 60, 66, and 72 inch storm sewer lines." (Allice Aff. 2, Doc. 16 Ex. 1.) Chase's work also consisted of "pouring concrete outflows at the ends of the 5 x 4 boxes and 12 x 8 boxes." (*Id.*)

Chase operated under two Purchase Orders: Purchase Order No. 88431 (Doc. 16 Ex. 4) and Purchase Order No. 91936 (Doc. 16 Ex. 5). According to Chase, "[e]ach of [these] Purchase Orders was revised over time, [sic] to include additional work and the additional prices to be paid by Shaw." (Allice Aff. 2, Doc. 16 Ex. 1.) Chase alleges that Shaw requested numerous changes to the work prior to the issuance of a revised Purchase Order and that these changes were subsequently incorporated within a revised Purchase Order. (*Id.*) Thus, Chase claims that monies remain due and owing under two categories of claims: (1) those due under the Purchase Orders; and (2) those which were performed by Chase at Shaw's instruction, in reliance on Shaw's history of requesting work then revising the Purchase Order to include the work after the same was completed. (*Id.* at 5.)

(1)     Monies allegedly due under Purchase Orders

The undisputed amount due under Purchase Order No. 88431 is $30,883.43 for the installation of 12 x 8 boxes. (*See* Summary of Remaining Charges ("Summary"), Doc. 16 Ex. 3.) The undisputed amount due under Purchase Order No. 91396 is $610.03 for a change order relating to manhole risers. (*Id.*) The remaining amounts under the Purchase Orders are disputed and include $27,682.77 for concrete channel lining related to the installation of the 5 x 4 boxes (Purchase Order No. 88431) and $3500.00 for the installation of steel and wire in preparation for pouring the outflow floor from the 12 x 8 boxes (Purchase Order No. 88431). (*See* Allice Aff. 3-5, Doc. 16 Ex. 1.)

(2)     Monies allegedly due for change orders

The second category of claims includes charges for labor and/or parts related to (1) two trenches dug for placement of the storm sewer systems ($3720.75 for trackhoe downtime, $5471.83 for labor related to the trench box, $2652.32 for the trench box itself, $16,376.14 for trackhoe standby time, and $18,325.73 for 12 x 8 shoring/rock placement); (2) the installation of two brick plugs in the 12 x 8 boxes ($15,802.04); and (3) an additional grade beam ($1429.64). (*Id.* at 6-7.)

Despite the non-payment issues, Chase continued its work on the Project. In October 2005, Chase requested three items from Shaw before Chase could continue to work. First, Chase requested a revision to the Purchase Order[1] for stamping the concrete on the outflow floors of the 12 x 8 boxes, which the District had required after the Purchase Order was issued. (*Id.* at 7.) Second, Chase required Shaw to "dewater and grade" the second 12 x 8 outflow area in order for Chase to complete the concrete stamping upon its receipt of the revised Purchase Order. (*Id.* at 8.) Finally, Chase requested a revised Purchase Order for the installation of redesigned "Type E risers." (*Id.*) Indeed, Chase sent an email and a letter regarding the same to Shaw. (*See* Doc. 16 Exs. 11 & 12 respectively.)

The total amount charged by Chase, including all change orders, was $427,423.19. (Allice Aff. 3, Doc. 16 Ex. 1.) The total amount of Shaw's Purchase Orders, without considering the additional work by Chase not included in the Purchase Orders, was $342,619.42. (*Id.*) According to Chase, it completed all but $20,415.29 of the work it was requested to perform and would have completed all of the work but for Shaw's failure to provide the three items discussed above. (*Id.*) Thus, Chase claims that the total amount due and owing to Chase is $126,454.68. (*Id.*; *see also* Stmt of Accounts, Doc. 16 Ex. 2.)

---

[1] It is unclear from the record which Purchase Order, either No. 88431 or No. 91936, Chase is referencing.

As such, Chase brought the current suit in state court against Shaw and its surety, the Insurance Company. In its state court petition, Chase asserts claims for : (1) breach of contract (Pl.'s Orig. Pet. ¶ 6, Doc. 1 Ex. B-1); (2) quantum meruit/unjust enrichment (*id.* ¶ 7); (3) violation of the Construction Trust Fund Act ("Trust Fund Act"), Tex. Prop. Code Ann. § 162.001 *et seq.* (Vernon 2007) (*id.* ¶ 8); (4) violation of the Prompt Payment to Contractors and Subcontractors Act ("Prompt Payment Act"), Tex. Prop. Code Ann. § 28.001 *et seq.* (Vernon 2000) (*id.* ¶ 9); and a bond claim under Tex. Gov't Code Ann. § 2253.001 *et seq.* (Vernon 2000) (*id.* ¶ 10). Chase also requests attorney fees under Texas law. (*Id.* ¶ 11). Shaw filed its original answer and a counterclaim for breach of contract (Shaw Ans. ¶ 3.01, Doc. 1 Ex. B-3).

On January 19, 2006, Shaw removed the case to this court on diversity of citizenship grounds. (Notice of Removal, Doc. 1.) Shaw is a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana. (*Id.* ¶ 4(b).) The Insurance Company is a Pennsylvania Corporation with its principal place of business in New York, New York. (*Id.* ¶ 4(c).)

On January 15, 2007, Defendants filed the current motion for summary judgment on "all claims asserted against them by Plaintiff" and for summary judgment in their favor on their counterclaim for breach of contract. Basing its arguments on certain provisions of the Contract, Shaw asserts three defenses to payment: (1) that Shaw is not bound to pay Chase unless and until Shaw itself is first paid by its customer; (2) that Chase impermissibly allowed liens to be filed with respect to the work and that Shaw was not required to pay Chase until such liens were satisfied; and (3) by permitting liens to be filed, Chase materially breached the Contract and Shaw is entitled to withhold payment. (Defs.' Mot. Summ. J. 2-3, Doc. 14.) In support of these defenses, Shaw's Project Manager on Hills at Sims Greenway project, Trevor Stolzenburg ("Stolzenburg"), testified that "Chase performed some work without getting prior approval from Shaw and/or the necessary change orders from Shaw for that work and requested payment for unapproved work." (Stolzenburg Aff. 2, Doc. 14 Ex. E.) Moreover, claims Stolzenburg, "Chase did not complete the project in a

timely manner and left the project without completing the agreed upon work." (*Id.*)  Thus, Shaw claims it refused to pay Chase only after Chase (1) failed to perform the work within the specified time periods, (2) invoiced certain work not authorized or actually performed, and (3) allowed excessive liens to be filed.  (*Id.*)

II.         Legal Standard on Summary Judgement

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).   The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact

for trial. *Celotex*, 477 U.S. at 323-24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant

in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.        Analysis

   (1)   Applicable Law

The parties dispute whether Texas or Louisiana law applies. Federal courts sitting in diversity must apply the choice-of-laws provisions of the state in which they sit, which in this case is Texas. *See  Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Duhon v. Union Pac. Resources Co.*, 43 F.3d 1011, 1013 (5th Cir. 1995). Here, the Contract states that it "shall be governed by and interpreted pursuant to the rules and laws of the State of Louisiana without regard to its conflict of law provision." (Contract ¶ 26, Doc. 14 Ex. A.) Under Texas choice-of-law principles, contractual choice-of-law provisions are generally enforced; nevertheless, "'the parties' freedom to choose what jurisdiction's law will apply . . . [is not] unlimited. They cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement. And they cannot by agreement thwart or offend the public policy of the state the law of which ought otherwise to apply.'" *Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 307 (5th Cir. 2006) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990)). Shaw argues that the contractual choice-of-law provision should be upheld and that Louisiana law governs the contract claims in this case.

Chase, on the other hand, argues that choice-of-law provision in the Contract is invalid and directs the court's attention to a Texas statute, which states

> [i]f a contract is principally for the construction or repair of improvements to real property located in this state and the contract contains a provision that makes the contract or any conflict arising under it subject to the law of another state . . . that provision is voidable by the party that is obligated by the contract to perform the construction or repair.

Tex. Bus. & Comm. Code Ann. § 35.52(a) (Vernon 2002). Chase, as the "party . . .obligated by the contract to perform the construction[,]" claims to have invoked the right to void the choice-of-law provision in the Contract. Therefore, Chase claims that Texas law should apply to the breach of contract claims.

It is well-settled, however, that a court need not engage in a choice-of-law analysis if the laws of the two states do not conflict. *See Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002); *W.R. Grace and Co. v. Continental Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990); *National Union Fire Ins. v. CNA Ins. Companies*, 28 F.3d 29, 32, n.3 (5th Cir. 1994). Absent an actual conflict, the law of the forum state applies. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616 (5th Cir. 2005). Although Shaw purports to move for summary judgment on all of Chase's claims, Shaw's briefing only addresses the competing breach of contract claims. Accordingly, the court examines only the legal principles regarding breach of contract under Texas and Louisiana law to determine whether an actual conflict exists.[2]

Neither party has identified any conflict regarding breach of contract claims under Texas and Louisiana law. Shaw's sole legal authority regarding breach of contract is *Olympic Ins. v. H.D. Harrison, Inc.*, which states that "*[s]imilar to other jurisdictions*, Louisiana recognizes the

---

[2] It is Shaw's burden, as the movant for summary judgment, to identify areas essential to Chase's claims in which there is an "absence of a genuine issue of material fact." *Reyna*, 401 F.3d at 349. In failing to discuss Chase's remaining common law and statutory claims, Shaw has not met this initial burden. Shaw's motion for summary judgment on these claims is, therefore, **denied**.

principle that where one party substantially breaches a contract the other party to it has a defense and an excuse for non-performance. 463 F.2d 1049, 1053 (5th Cir. 1972) (emphasis added).[3] The same principle is found under Texas law: "[i]t is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) (citing *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). Additionally, under Texas law, "[a] breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 214 (Tex. App.–Dallas 2005, no pet.) (citing *Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex. App.–Dallas 1991, writ denied). Louisiana law on this point is substantively the same: "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation. A failure to perform results from nonperformance, defective performance, or delay in performance." La Civ. Code Ann. art. 1994 (2007). Thus, given the lack of conflict between Texas and Louisiana on the basic breach of contract principles and the failure of the parties to so identify, the court need not pursue the conflict-of-law analysis further and will apply Texas law to the breach of contract claims and defenses presented here.[4] *See R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 221-22 (5th Cir. 2005) (affirming district court's decision to forgo engaging in choice of law analysis where the substantive contract law of Texas and Louisiana did not conflict and where no salient difference between the two laws was identified).

---

[3] Shaw raises this allegation as both a defense to its failure to pay Chase and as a counterclaim for damages.

[4] The court notes, however, that if the laws of Texas and Louisiana did actually conflict on the breach of contract issue, then the court would apply Tex. Bus. & Comm. Code § 35.52 (a) in this case. Texas has adopted section 6 of the ALI Restatement (Second) of Conflict of Laws, the first provision of which states that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." *See Spence v. Glock, GES.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000). The statutory directive in Tex. Bus. & Comm. Code § 35.52(a) is clear: choice-of-law provisions in construction contracts for repair or improvements to real property in Texas may be invalidated by the party obligated to perform the repair or improvement under the contract; in this case, Chase. Thus, under section 35.52, Texas law would still apply to the breach of contract defenses and claims presented here.

(2) Fact issues preclude summary judgment at this juncture.

Shaw has moved for summary judgement not only on its defense to Chase's breach of contract claim but also on its counterclaim of breach of contract against Chase. With respect to its defense, Shaw asserts that no monies are owed because (1) under the Contract Shaw is not bound to pay Chase unless and until Shaw is first paid by its customer,[5] (2) under the Contract Shaw could withhold payment to protect its interest with respect to filed liens and unpaid sub-subcontractors,[6] and (3) under the Contract Shaw could terminate the agreement if Chase materially defaulted in its performance.[7] With respect to its counterclaim, Shaw asserts that Chase breached the contract by defaulting in performance, by changing work without the required prior written approval of Shaw, and by failing to pay its sub-subcontractors. (*See* Stolzenberg Aff. 2, Doc. 14 Ex. D.)

None of the contract provisions relied on by Shaw establish as a matter of law that it was entitled to withhold payment from Chase indefinitely. First, the provision relating to withholding payment until Shaw is first paid by the Project owner is not conclusive because Shaw has offered no evidence (nor has even claimed) that the Project owner has not paid. Paragraph 3 of the Contract is, therefore irrelevant.

---

[5] Paragraph 3 of the Contract states that "IT IS UNDERSTOOD AND AGREED BY THE CONTRACTOR THAT PAYMENT FROM THE CUSTOMER TO SHAW ENVIRONMENTAL, INC. FOR WORK PERFORMED BY THE CONTRACTOR IS A CONDITION PRECEDENT FOR PAYMENT BY SHAW ENVIRONMENTAL, INC. TO CONTRACTOR." (Contract ¶ 3, Doc. 14 Ex. A (emphasis in original).)

[6] Paragraph 24 of the Contract states that

> [n]otwithstanding anything to the contrary herein contained, [Shaw] shall have the right to withhold from any payments due or to become due [Chase] such amounts as [Shaw], in its sole discretion, deems necessary to protect [Shaw's] interests with respect to . . . (iii) any third-party claims filed or reasonable evidence indicating probable filing of any such claims; (iv) any Liens in favor of any workers, suppliers of material or laborers; (v) a claimed failure of [Chase] to make any payments to its Subcontractors, Suppliers, or laborers; . . .

(Contract ¶ 24, Doc. 14 Ex. A.)

[7] Paragraph 13 of the Contract deals with defaults. It states, in relevant part, that ". . . if [Chase] shall **materially default** in its performance of any provision of this Agreement, then [Shaw] and [Chase] shall have the following rights, obligations and duties . . . [Shaw], without prejudice to any other right or remedy, may terminate this Agreement forthwith on written notice to [Chase]." (Contract ¶ 13(A), Doc. 14 Ex. A (emphasis added).)

Second, paragraph 24 of the Contract only permits Shaw to withhold payments "to protect [Shaw's] *interests* with respect to" liens being filed on the Project. (*See* Contract ¶ 24, Doc. 14 Ex. A (emphasis added).) Withholding payment to protect an interest in liens being filed is starkly different than withholding payment indefinitely. This distinction is especially true in this case where Chase "stipulates and agrees that upon Shaw providing copies of such payments [to lien holders when Chase was still on the job], Shaw will be entitled to a credit for such proven amount against the balance due and owing to Chase." (Pl.'s Resp. 15, Doc. 16.) This provision, therefore, cannot be used by Shaw as an avenue of withholding all monies admittedly owed under the Contract.

Finally, there are questions of fact regarding whether Chase "materially default[ed]" under the Contract. The court determines what conduct is required by the parties as a matter of law, but, insofar as a dispute exists concerning the failure of a party to perform the contract, it is appropriate to the jury to decide the disputed facts. *Meek v. Bishop, Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.--Houston [14th Dist.] 1996, writ denied). These fact issues include, but are not limited to, (1) whether Shaw requested the various change orders; (2) whether Chase is entitled to payment on these change orders; and (3) whether Shaw's refusal to provide the items requested by Chase prevented Chase from completing its obligations on the Project.

For these same reasons, the court cannot conclude that Chase breached the Contract as a matter of law. Shaw bears the burden of proof on its counterclaim and has not established that no dispute of material fact exists regarding all of the essential elements its claim. *See Fontenot*, 780 F.2d at 1194 (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

IV.     Conclusion

Accordingly, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Doc. 14) is **DENIED**.

SIGNED at Houston, Texas, this 28th day of September, 2007.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE